## Evans *v.* Gale.

It is not duress to threaten one with a law-suit.

If an indorser has paid and taken up the note, which, under the circumstances, he was not bound to pay, and seeks to avoid the act on account of improper means that have been used to induce him to do it, he must return the note to the party from whom he received it, and will not be permitted to show, in excuse for not returning it, that the maker was insolvent.

ASSUMPSIT, to recover $12.50 alleged to have been paid by the plaintiff to the defendant without consideration.

The facts appear in the deposition of Hanson Evans, who testified, in substance, that his father, the plaintiff, having received a notice from an attorney that a demand had been lodged with him for collection, directed the witness to go and inquire what it was, and, if possible, to settle it, and gave him $5 to enable him to do so.

Upon inquiry, he learned from the attorney that the defendant was the holder of a note for about $15, made by one Knight, payable to the plaintiff, or order, and by him indorsed without recourse, and sold for less than its face to one Sleeper, from whom Gale, the defendant, received it; that Gale had left the note with the attorney, with directions to call on the plaintiff, as indorser, to pay it.

The witness being in doubt as to what he had better do, called Sleeper and Gale into the attorney's office, and after some conversation desired the latter to wait till the last of the week, that he might return and receive his father's instructions. Gale had offered to settle by taking somewhat less than the amount of the note, but in answer to the witness's request said, "if I have to wait till the last of the week I will take the whole face of the note ;" and that, if not then paid, he would sue it, and if he could not get it he would go to law about it.

The witness replied, "We had rather settle it than go to law about it, for we have never got into the law." He then settled the demand by paying $12.50, of which Sleeper had lent him $2.50, and $5 were advanced of his own money.

On returning home and informing the plaintiff, his act was not disapproved of, though the plaintiff remarked that he was not liable to pay the demand.

It was proved that the maker of the note was poor and intemperate, and much in debt.

The note was received by the witness when he paid the money, and was not returned or offered to the defendant before the action was commenced.

The court instructed the jury that unless the note was entirely worthless the plaintiff could maintain no action to recover back the money paid, unless he first offered to restore it. But if worthless its return was not necessary.

They further instructed the jury, that the fact that Knight was under forty years of age, was healthy, honest and laborious, did not necessarily show that the note had value, he being shown to be poor and intemperate. Neither did the fact that Knight's wife's father, still living, was a man of property, and that Knight himself had lately paid some small debts, necessarily prove the note to be of value. But the jury must consider all the circumstances of his character, habits and situation, as disclosed by the evidence, and whether he would be likely to renew the note to prevent the statute bar, and whether the defendant would in view of the circumstances deem the note of any value, and make any use of it, if he had it.

The court further charged the jury that if the defendant or his agents concealed from the witness, Hanson Evans, the words, "not liable," indorsed upon the note, it would be such a fraud as would render him liable to refund the money. But that there was no such fraud, if

the note was so shown to him that he could have read it. The court further instructed, that if Hanson Evans was induced to pay the sum demanded, in consequence of the defendant's threats to sue and get his father into the law, and so to collect the whole face of the note; and to relieve his father of such a trouble, not knowing but his father would be liable, while in fact he was not, the facts would afford evidence of such duress and coercion as would entitle the plaintiff to recover in this action the $5 which he had furnished his son to settle the demand. But that he could recover no greater sum, unless the son acted in paying the remainder as the agent of his father, within the scope of authority previously granted, or unless the plaintiff afterward approved and ratified the act.

The jury returned a verdict of $5 for the plaintiff, which the defendant, for errors appearing upon the case, moved the court to set aside.

*Perley*, for the defendant. The evidence was incompetent upon which the court permitted the jury to find that the note against Knight was of no value.

The note should have been returned. When a contract is rescinded, the rights of the parties must be restored, and the possession which the party has given up by the contract must be made as perfect as it was before. Nothing will excuse a party seeking to rescind from restoring what he has received, except its absolute worthlessness. Unless it legally appear to be of no value, the party has a right to it, and to try his chance with it. It must be returned, unless, in case it had been bailed, the bailee would be excused from returning it, if of no value.

The court charged the jury as to the statute of limitations affecting the value of the note. This bar has matured while the plaintiff held the note.

It does not appear that the note was worthless. On

the contrary, there was evidence that it might have been of some value.

Threatening to sue is no duress. Every lawyer does that.

*N. Eastman,* for the plaintiff.

GILCHRIST, J. The plaintiff in this action having a note against one Knight, deemed of at least doubtful solvency, sold it to Sleeper, from whom it passed to the defendant. He placed it in the hands of Mr. Fogg, his lawyer, who, in the prosecution of what he deemed his duties, called upon the plaintiff, as the indorser, to pay it. This the latter was not bound to do, but through the agency of his son, to whom he appears to have communicated somewhat general and undefined powers, yielded to the claim that was made, and by paying a sum of money a little less than the face of the note, took it up, and became again the proprietor of the paper. This it is said that he did under such circumstances of intimidation from the menace of a lawsuit, to which he admitted to his adversaries his great aversion, as to amount to duress; and that so he is entitled to recover back the money that he was induced to pay, and to rescind and to treat as wholly nugatory the arrangement into which he was urged by the intimidating measures that were adopted to effect the object of the defendant and his associates. The evidence on this head appears in the testimony of Evans, the son of the plaintiff, and the agent upon whom the intimidation is alleged to have been practiced. He says that having received his father's instructions to call upon Mr. Fogg, and learn what the demand was in relation to which Fogg had written him a letter, and having seen him, and Sleeper, and Gale in succession, and being undecided in his own mind as to the course he ought to pursue, he asked a week's delay, that he might see his

Evans *v*. Gale.

father and obtain his instructions. " Gale said, ' if I have to wait till the last of the week, I will have the whole face of the note;' and if it was not then settled he would sue it. Gale said if he could not get it he would go to law about it. I replied that we had rather settle it than go to law about it, for we have never got into the law. I then settled it," &c.

We think that these facts do not amount to duress or coercion. The defendant had a perfect right to prosecute his claim at law, and, if he really intended to pursue such a course, had as clear a right to advertise the plaintiff of his purpose. If there were evidence in the case from which it were necessary to infer that the plaintiff's agent was wholly ignorant of the merits of the case, and that the defendant, availing himself of such ignorance, and of his own superior knowledge, had wrought upon the mind of the witness by groundless threats of legal proceedings, the transaction might wear an aspect unfavorable to some of the parties, but would scarcely amount to duress.

The duress that is sufficient to avoid an act done under its influence has in general been held to be such as to induce an apprehension of the loss of life, or limb, or of personal liberty. The fear of a battery, or of having one's house burned, is said not to be sufficient. It is said that if one executes a bond, when arrested on legal process for a cause of action that is not good, he may avoid it by a plea of duress ; but he may also have his action for false imprisonment ; which shows that something more is necessary than a mere misapprehension on the plaintiff's part, and that he must have abused the process. 1 Rep. 119 ; Jacob's Law Dictionary. The cases do not go go the extent of enabling one to avoid his act by a plea of duress, upon a mere threatening of a suit at law, in which no arrest is made or even hinted at.

The ruling of the court of common pleas upon this point, therefore, was erroneous.

The defendant insists on another exception. The plaintiff having, as indorser of the note against Knight, paid it, was entitled to the possession of it. He became the owner of it, and might have brought an action upon it in his own name against the maker, as he might have done if he had not indorsed and transferred it. This is upon the assumption that the payment was a valid act, performed by him without fraud, duress or imposition of any sort that would enable him to avoid 'it.

The consequence would be the same if the payment had been made under those influences, and the act had accordingly been a voidable one; for acts so performed are not void, but voidable only at the election of the party who performs them. But when the election of the party is made to avoid his act, the other parties must be restored to the situation they were in prior to the performance of the voidable act, so far at least as it remains in the power of him who makes the election to restore them. In this case, it was the duty of the plaintiff to restore the note which he had taken up to Gale, whose property it was when he paid it, and whose it became of course upon the avoidance of the act, which had the effect of transferring the property and possession to the plaintiff. *Luey* v. *Bundy*, 9 N. H. Rep. 298 ; *Shepherd* v. *Temple*, 3 N. H. Rep. 455 ; *Case* v. *Morey*, 1 N. H. Rep. 347.

This is a clear principle of equity, and is not indeed called in question by either of the parties in the argument. But it is said that the note was wholly worthless, and so the plaintiff was excused from returning it. The law does not require the performance of idle ceremonies, or insist upon compliances from which the parties can derive no advantage. And this is not, as a general principle, called in question.

But the note was legally binding upon the maker of it. It had been originally received by the plaintiff from the

maker, and treated as having value, as the evidence of indebtedness, and had been negotiated by him and sold for value. When the plaintiff paid it as indorser, he again received it into his possession as having become his property by reason of the payment. Had the defendant refused to deliver it up to the plaintiff on that occasion, it could hardly be supposed that an action might not be maintained for its recovery, or that, because the poverty of the maker might be given in evidence to mitigate the damages, the effect of such evidence would be wholly to defeat the action. The cases in which the law excuses a party rescinding his contract from restoring what he has received, are those in which the court are able to say that the thing received is worthless, as in the case of a void patent right, or at least where there is a clear line to distinguish the thing as valueless, from a thing of which the value is but small. *Holden* v. *Curtis,* 2 N. H. Rep. 61; *Case* v. *Morey,* 1 N. H. Rep. 248.

Now we do not think that a jury can properly infer that a promissory note is without any value to the legal holder of it, from the mere fact that the maker is insolvent, although its value may, from that circumstance, be but small in comparison with what it would be in different circumstances. The law annexes a value to the paper, and it would be a loose practice in such a case as this to submit to the jury to consider whether the skill or good fortune of the party entitled to the possession of it would probably enable him to derive a substantial benefit from the possession. Debts are often paid by insolvent persons. There are many whose earnings more than suffice for their support and that of their families, and who apply the surplus to extinguish debts which have resulted from their past imprudence or misfortune; and it would be difficult to present to a jury the evidence of a case so clear as to enable them to determine, as a matter of fact, that a particular debt, legally binding upon an individual, would not be paid.

We are therefore of the opinion that it was not properly left to the jury to inquire whether this note was of any value. The case did not render it material to ascertain whether it was of much value or of little value. That was consequently a matter with which the jury had nothing to do but to inquire whether the plaintiff, in undertaking to rescind the payment which he had been induced by any supposable improper practices to make, had restored to the party with whom he had been dealing what he had received by reason of the payment.

The verdict must be set aside, and a

*New trial granted.*